UNITED STATES, Appellant

v.

HUGH H. NORRIS, Private First Class, U. S. Army, Appellee

2 USCMA 236, 8 CMR 36

No. 1756

Decided February 27, 1953

LT. COL. Thayer Chapman, U. S. Army, and 1ST LT. Robert K. Mayo, U. S. Army, for Appellant.

LT. COL. Herman P. Goebel, Jr., U. S. Army, and 1ST LT. Jack J. Albert, U. S. Army, for Appellee.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, charged with larceny in violation of Article 121 of the Uniform Code of Military Justice, 50 U. S. C. § 715, pleaded guilty to "taking without authority" in violation of Ar-

**237**

ticle 134, 50 U. S. C. § 728. At the conclusion of the trial, the law officer advised the court that the accused could not be found guilty of any offense other than larceny or wrongful appropriation. The court found him guilty of wrongful appropriation and sentenced him to dishonorable discharge, total forfeiture of pay and confinement for one year. The convening authority approved, reducing the confinement to six months. The board of review held that the law officer erred in not instructing the court on the legal effect of intoxication in relation to the specific intent required for both larceny and wrongful appropriation, and in withdrawing the offense of "wrongful taking" from the court's consideration. Because of these errors, the board affirmed only a finding of wrongful taking under Article 134, supra, and reduced the sentence to confinement for four months and forfeiture of $50.00 per month for a like period. The Judge Advocate General has certified the questions of whether there is any legal offense of wrongful taking under Article 134 and, if so, what is the maximum punishment for the offense.

We note at the outset that there is a divergence of service viewpoint on the question of whether wrongful taking constitutes an offense under Article 134, supra. See United States v. Richards, ACM S–3500, decided October 9, 1952; United States v. Enroth, ACM 5582, decided October 1, 1952; United States v. Sudges, CM 354542, decided October 10, 1952. Those decisions reaching the same result as the board of review in the instant case, predicate their conclusion on the view that the act of wrongful taking constitutes conduct of the type condemned by Article 134 irrespective of whether it is made punishable by the Articles of the Code delineating specific offenses. It is conceded by these decisions that a specific intent—to either temporarily or permanently deprive the owner of his property—is required for the offenses of larceny and wrongful appropriation defined in Article 121, supra, but that only the general criminal intent necessarily concomitant to a wrongful taking

238

is necessary for the offense under Article 134. These decisions point out, as precedent, the "wrongful taking" statutes of New York and the District of Columbia. See New York Penal Law, Sec. 1293a; District of Columbia Code Title 22, Sec. 2204.

Some consideration of the preceding law is essential to decision here. Larceny, without definition thereof, was made punishable by Article of War 93, 10 U. S. C. § 1565. The Manual for Courts-Martial, U. S. Army, 1949, defined the crime in its common law sense. Added to paragraph 180g, defining larceny, is the statement that if the accused intended to deprive the owner temporarily of his property, the court could find him guilty of the lesser included offense of wrongful appropriation in violation of Article of War 96, 10 U. S. C. § 1568—the predecessor of Article 134, supra. No discussion of such an offense appeared in the Manual paragraph relating to Article 96. However, there was included a sample specification for "joyriding" which included an allegation of an intent to deprive temporarily and one labelled "wrongful taking and using" which contained no such allegation. Manual for Courts-Martial, U. S. Army, 1949, pages 330, 333. The latter specification was, however, corrected by joint Army and Air Force Bulletin No. 3 of 1949 to require "the intent to deprive." This same offense was labelled in the Table of Maximum Punishments, paragraph 117c, as "wrongfully taking or wrongfully taking and using the property of another, wilfully and with the intent to deprive the owner temporarily of his property." Under these circumstances, we have some doubt as to the correctness of the service rulings that Article of War 96 embraced a criminal conversion offense lesser than wrongful appropriation and requiring no specific intent. See United States v. Hendrick, 70 BR 293; United States v. Meece, 76 BR 11; United States v. Evans, 2 CMR (AF) 470; United States v. Dedricksen, 1 CMR(AF) 504.

Whatever may have been the state of the law prior to the Uniform Code, we are convinced that the general Ar-

ticle of the Code—Article 134, supra —embraces no criminal conversion offense lesser than wrongful appropriation as defined by Article 121, supra. That Article includes larceny and wrongful appropriation—the distinction between the two lying in the required element, for the former, of an intent to deprive permanently and, for the latter, of an intent to deprive only temporarily. "Wrongful taking" is not mentioned as an offense anywhere in the Code or Manual. No sample specification governing such an offense is listed; it is not mentioned in the Table of Maximum Punishments; and it is not listed in the "Table of Commonly Included Offenses" as lesser included under larceny.

In discussing the Code during Senate Subcommittee hearings, Professor Morgan commented that "we have made specific several offenses which were previously punishable under the general article." He added that it was the intent of the drafters to specifically define the non-military offenses and leave the general article "pretty much only for military offenses." Hearings before Senate Committee on Armed Services on S. 857 and H. R. 4080, 81st Congress, 1st Session (1949), pages 37, 47. During the House Subcommittee hearings the following discussion relative to Article 121 took place:

"Mr. Elston. But you are including three offenses in one: Larceny, embezzlement and obtaining property by false pretenses?

"Mr. Larkin. That is right.

"Mr. Elston. And perhaps conversion also?

"Mr. Larkin. Yes.

"Mr. Smart. This includes joy riding.

"Mr. Larkin. Yes, under this section a person who would drive the automobile of another, and not intend to steal it at all but just drive it, without consent of the owner would be guilty under Article 121." [Hearings before House Committee on Armed Services on H. R. 2498, 81st Congress, 1st Session (1949), page 1245.]

In the initial draft of Article 121, the phrase "wrongfully takes" was included in the definition of and thus made a part of the crime of larceny. House Hearings, supra, page 591. This provision was criticized by a former Judge Advocate General and others, and was finally eliminated. House Hearings, supra, pages 772, 815. In preparing Manual paragraph 200b, which discusses Article 121, the drafters stated that "wrongful taking and using (189) [referring to the deletion of Specification 189, Manual for Courts-Martial, U. S. Army, 1949, page 333, discussed supra] has now become wrongful appropriation in violation of Article 121." Supporting Notes, Manual for Courts-Martial, United States, 1951, Article 134, Supporting Memorandum Specifications under Article 134, page 3. The drafters also stated that Article 121 wrongful appropriation "includes offenses heretofore known as misappropriation, misapplication, joyriding, wrongful taking and using, and wrongful conversion." Supporting Notes, supra, Article 121, Supporting Memorandum, page 12.

It is our view that, in accordance with the remarks of Professor Morgan, quoted earlier, Article 134 should generally be limited to military offenses and those crimes not specifically delineated by the punitive Articles. See Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, page 720. As the Manual itself notes, there is scarcely an irregular or improper act conceivable which may not be regarded as in some indirect or remote sense prejudicing military discipline under Article 134. Manual for Courts-Martial, United States, 1951, page 381. We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134.

We are persuaded, as apparently the drafters of the Manual were, that Congress has, in Article 121, covered the entire field of criminal conversion for military law. We are not disposed to add a third conversion offense to those specifically defined. It follows that

**239**

there is no offense known as "wrongful taking" requiring no element of specific intent, embraced by Article 134 of the Code. The ruling of the law officer to that effect at the trial was correct. However, we concur with the board of review in holding that the law officer erred, considering the evidence presented, in not instructing the court on the legal effect of intoxication on the offenses charged. There is no lesser offense not requiring specific intent which could be affirmed so as to purge the error. Accordingly, the decision of the board of review is reversed and a rehearing is ordered.

Judge LATIMER concurs.

BROSMAN, Judge (concurring):

It strikes me that, for reasons soundly based in function and policy, military law *should* recognize an offense in the nature of "wrongful taking," requiring only a general criminal intent. Although occasion for the proscription of such misconduct may obtain in the civilian community as well, inducements both more numerous and more compelling appear to me to be present in the military scene. The possible unfortunate future result in the case at bar, for example, affords an illustration of the sort of thing I have in mind.

Additionally, I had supposed that such a crime *was* known to military criminal law. However, I have been convinced by my brothers that no such offense exists under the Uniform Code of Military Justice and the Manual for Courts-Martial, United States, 1951, and I fully concur in their disposition of the instant case.

However, I am impelled to question what seems to me to be the clear implication of the majority opinion that Article 134, 50 U. S. C. § 728, is and should be "generally limited to military offenses." I am inclined to doubt the correctness of this suggestion in both its present and imperative aspects. A glance at the Manual's Table of Maximum Punishments, under the heading of Article 134, demonstrates readily that many substantial non-military crimes are currently enumerated thereunder, and I see no overmastering reason why this should not be so. While it is perfectly true—as the Manual says—that "an irregular or improper act on the part of a member of the military service can scarcely be conceived which may not be regarded as in some indirect or remote sense prejudicing discipline," I would exercise care not to push this notion *too* far. I can easily conceive of wrongful takings which, principally as disorders, fall within the objectives of Article 134 with a much greater show of propriety than numerous offenses now included thereunder. My previous judicial conduct must indicate that I have every wish to protect fully the rights of accused persons. At the same time, I am anxious not to impede military commanders in the proper exercise of their responsibility to maintain discipline.