**UNITED STATES, Appellee,**

v.

**Specialist Four Ronald D. HOWELL, SSN 240–21–5106, United States Army, Appellant.**

**SPCM 17785.**

U.S. Army Court of Military Review.

31 Aug. 1983.

---

Captain Michael D. Graham, JAGC, argued the cause for the appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Major Robert C. Rhodes, JAGC, and Major Paul J. Luedtke, JAGC.

Captain Michael E. Pfau, JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before CLARKE, BADAMI and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

CLARKE, Senior Judge:

Appellant was convicted by a special court-martial with members of four specifications of larceny. On appeal he challenges the admissibility of photographs taken by a bank's Automated Teller Machine (ATM). He also contests the propriety of his photographic identification by his roommate. We affirm, holding that such photographs are admissible under Military Rule of Evidence 901(a) and that the photographic identification did not improperly invade the province of the fact finders.

The evidence at trial showed that on 28, 29, 30 and 31 December 1981, the appellant appeared before the First Citizens Bank ATM located at the bank's 82d Airborne Division branch office and withdrew $100.00 on each date from the account of his roommate, Private Kirk Southwell. He accomplished this by using Southwell's "bank card" and by entering Southwell's four-digit "personal identification number." When the appellant inserted the "bank card" into the ATM, his photograph was taken and the month, day, and time was recorded. When the appellant withdrew the $100.00, his photograph was again taken and the machine number and transaction number were recorded. For each date, a Terminal Settlement Report (TSR) was produced which listed the ATM machine number, each transaction number; the date and time of each transaction, the account number of the account with respect to which a transaction was conducted, and the amount of money deposited, withdrawn or transferred.

To explain how the ATM's camera functions and how photographs were determined to pertain to appellant's four with-

drawals from Southwell's account, the government called four witnesses. These witnesses testified as to the manner in which the film was installed in the camera, how the camera was activitated, the fact that the film was removed from the camera, placed in a cannister at the local branch office with the ATM machine number, and dates covered by the film recorded, the chain of its possession and the fact that it was properly developed and contact prints made from it.

Mrs. Marcilene Stuart was employed as the customer service representative, teller supervisor and custodian of the tapes for the First Citizens Bank 82d Airborne Division branch office. She identified the photographs, Prosecution Exhibits 5 through 12, as having been taken at the ATM machine at the 82d Airborne Division branch office because she recognized the scene depicted in the photographs as being the area outside the branch office. Mrs. Catherine Mongold who was employed at the Fort Bragg office to supervise the ATM machine, testified that the photographs depicted in Prosecution Exhibits 6, 7, 10, and 12 were taken at the ATM machine at the 82d Airborne Division branch office and that they pertained to transactions on 28, 29, 30 and 31 December. Mr. William Allen, who had been the manager of the Electronic Banking Department for the First Citizens Bank for two years, testified that by matching the transaction numbers recorded on the photographs in Prosecution Exhibits 6, 7, 10, and 12 to the accompanying TSR, it revealed that the appellant withdrew $100.00 on each occasion. Southwell, the appellant's roommate, identified the appellant in one of the photographs.

Appellant contends that the photographs can be admitted only if a teller or someone else who was present when it was taken can testify that it is a fair and accurate representation of Specialist Four Ronald D. Howell as he appeared when the picture was taken. In the case before us it is, of course, impossible for any of the tellers to testify that the events accurately depicted the events at the time of the transaction as the process is entirely automated and none of the tellers were present.

"The requirement of authentication ... as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a), Military Rules of Evidence. Under the traditional "pictorial testimony theory of photographs," *People v. Bowley,* 59 Cal.2d 855, 31 Cal.Rptr. 471, 475 n. 5, 382 P.2d 591, 595 n. 5 (1963), a photograph may be authenticated by the testimony of a witness who expresses familiarity with the scene depicted and states that the photograph is an accurate representation of that scene. *See Kleveland v. United States,* 345 F.2d 134 (2d Cir.1965); *United States v. Jeffery,* 12 C.M.R. 337, 345–46 (ABR 1953). Under this theory, the photograph is then incorporated by reference into the testimony of the authenticating witness and is admissible merely as an illustration of that witness' testimony. *See People v. Bowley, supra; see generally* McCormick, *Evidence* § 214 at p. 531 (2d ed. 1976); 3 *Wigmore on Evidence* § 790 at p. 219 (1970).

However, a more modern approach toward authentication has gained wide acceptance among jurisdictions facing this admissibility issue. This theory, referred to as the "silent witness" theory, allows admission of photographic evidence, even in the absence of eyewitness verification, when the proponent of the photograph adequately establishes the reliability of the process producing the photograph, thereby allowing the fact finders to reasonably infer that the contents of the photograph accurately depict the event it is offered to prove. 3 *Wigmore on Evidence* § 790 (1970). This concept of authentication has been adopted by an overwhelming majority of federal circuits. *See United States v. Clayton,* 643 F.2d 1071 (5th Cir.1981); *United States v. Bynum,* 567 F.2d 1167 (1st Cir.1978); *United States v. Stearns,* 550 F.2d 1167 (9th Cir.1977); *United States v. Taylor,* 530 F.2d 639 (5th Cir.), *cert. denied* 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976); *United States v. Gray,* 531 F.2d 933 (8th Cir.), *cert.*

denied 429 U.S. 841, 97 S.Ct. 117, 50 L.Ed.2d 110 (1976); *United States v. Pageau,* 526 F.Supp. 1221 (N.D.N.Y.1981). For a collection of state cases, *see Fisher v. State,* 7 Ark.App. 1, 643 S.W.2d 571, 575 (1983).

■ We adopt the "silent witness" view. Thus, a photograph is properly authenticated once sufficient facts are established to support a reasonable inference that the subject matter is what the proponent claims. *See* Mil.R.Evid. 901. This foundational requirement is satisfied circumstantially by evidence which establishes the reliability of the process or system which produces the photograph. *United States v. Stearns, supra* at 1171; *United States v. Taylor, supra* at 641–42.

■ Under the circumstances of this case, we find that the testimony of the government witnesses furnished sufficient authentication for the admission of the photographs.

■ Appellant also contends that the military judge should not have allowed appellant's roommate, Southwell, to identify the person depicted in the government's photographs as the appellant because this (1) invaded the province of the fact finders, and (2) had more prejudicial impact than probative value. We see no error in the admission of this testimony. An examination of Southwell's testimony shows that it meets the requirements of Military Rule of Evidence 701 as being "rationally based on the perception of the witness" and helpful to the determination of a fact in issue. As appellant's roommate, Southwell was in an ideal position to recall appellant's appearance and compare it to the photograph. There is no evidence that the appellant altered his appearance and thus the fact-finders could perhaps determine whether the appellant was the person in the photograph without Southwell's testimony. Unlike the case of *United States v. Butcher,* 557 F.2d 666 (9th Cir.1977) (lay opinion by police and state parole officers of surveillance photographs), the defense could fully cross-examine Southwell on the accuracy of his recollection and any motives he might

harbor to identify his roommate as a thief. *United States v. Calhoun,* 544 F.2d 291 (6th Cir.1976). The probative value of this testimony was not outweighed by the possibility of unfair prejudice within the meaning of Military Rule of Evidence 403, as the testimony did not create an undue tendency to suggest a decision on an improper basis, emotional or otherwise.

The other assignments of error have been considered and found to be without merit.

The findings of guilty and the sentence are affirmed.

Judge BADAMI concurs.

NAUGHTON, Judge, concurring:

I concur in the majority's holding concerning the admissibility of photographic evidence and the propriety of the photographic identification of appellant by his roommate. I also agree that the findings of guilty and sentence in appellant's case should be affirmed, but I believe that two of the five remaining assignments of error found to be without merit by the majority opinion deserve discussion.

In Assignment of Error IV, appellant contends that trial counsel's references to appellant as a "former paratrooper" and to appellant's larcenies as "barracks thievery" were improper because they were inflammatory and not based upon the evidence.

During trial counsel's final argument before findings, defense counsel objected to trial counsel's initial reference to appellant as a former paratrooper of the 82d Airborne Division. The military judge sustained the objection and instructed trial counsel not to argue matters not in evidence. Trial counsel proceeded to argue to court members:

> You have before you a member of the 82d Airborne Division who, on the 28th, 29th, 30th and 31st, during the Christmas Season—"Peace on Earth, Good Will Towards Men", his own roommate took $100 each day from his roommate's account, from the automatic teller machine card which was taken from him by Spec Four Howell. Now, the 82d Airborne Division is a unique unit—that we've got to go someplace quickly, in 18 hours. The type of crime that we have here today is the

type of crime that hurts that inherent combat effectiveness of the 82d Airborne Division. Barracks thievery hurts a unit. It hurts the company, the battalion, and ultimately the 82d Airborne Division and the country. It is the type of thing that soldiers should not do to one another. It's the type of thing that roommates should not do to one another.

Defense counsel again objected to trial counsel's argument. The trial counsel responded by objecting to defense counsel's interruption of his argument. The military judge decided all objections would be reserved until the close of the argument. Trial counsel thereafter finished his argument, defense counsel argued, and trial counsel presented a rebuttal argument. The military judge then instructed the court members, *inter alia,* that counsel's arguments were not evidence and that the court members were not to give them any further credence or attach to them any more importance than the court members' own recollections of the evidence compelled. The military judge also instructed the court members that "only matters properly before the court as a whole [could] be considered" in determining appellant's guilt. The military judge did not give a specific cautionary instruction regarding trial counsel's argument. Trial defense counsel did not object to the military judge's instructions on findings or request additional instructions.

I find the trial counsel's argument as set out above to be improper,[1] and particularly note that the "barracks thievery" comments if they were appropriate, and I find they were not, more properly associated with argument on sentence rather than findings. Nevertheless, I find that the trial counsel's improper argument was adequately neutralized by the instructions given by the military judge.

Appellant asserts in Assignment of Error V that assistant trial counsel, during his sentencing argument, improperly contended that appellant would not serve confinement at hard labor for six months because of "good time."[2]

During rebuttal argument at sentencing, assistant trial counsel argued, in pertinent part:

> [Trial defense counsel] also alluded to the six months that we asked you to incarcerate the individual, the accused. We ask you to send him away for six months, so to speak. Ask yourself—is that really a draconian kind of a penalty for what he did? We don't think so. We don't even think he's going to be in confinement for six months. You all know what good time is.

Trial defense counsel objected to this argument. The military judge sustained the objection and immediately instructed the court members to disregard the comments by assistant trial counsel concerning any action the confinement facility might take if appellant was sentenced to confinement. The military judge cautioned, "The court may not consider anything other than what an appropriate sentence is for the accused today." During instructions on sentencing, the military judge again advised the members, "You must not adjudge an excessive sentence in reliance upon possible mitigating action by the convening or higher authority." Trial defense counsel did not object to the sentencing instructions or request that the military judge give any additional instructions.

Here again, I find the assistant trial counsel's argument to be improper,[3] but conclude that it was rendered harmless by the military judge's instructions.

---

1. *See* ABA Standards for Criminal Justice §§ 3–5.8 and 3–5.9 (2d ed. 1980).

2. Appellant was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $350.00 per month for six months, and reduction to the grade of E–1.

The convening authority approved the adjudged sentence.

3. *See United States v. Carpenter,* 11 U.S.C. M.A. 418, 29 C.M.R. 234 (1960); *United States v. Simpson,* 10 U.S.C.M.A. 229, 27 C.M.R. 303 (1959).